# Hamilton's Estate.   Bradish's Appeal.

1. A testator made a will dated November 20th 1871; he made another dated January 13th 1873; he made a "codicil to my last will and testament," dated "this — day of January 1873." By the codicil, after referring to the law relating to bequests to charities, he provided, "Now I declare said will of 20th November 1871 to be my last will should I die before the 1st of March 1873, otherwise the will of 13th January 1873 shall be my last will." He died on the 23d of January 1873. *Held*, that paper of November 1871 was his will.

2. The paper of January 13th 1873 was not his will, the contingency on which it was to become so never having happened; and it did not therefore revoke the will of 1871.

3. The codicil and the will of 1873 are to be construed as one instrument.

4. The will of 1871 spoke from its date, and the charitable bequests were not avoided under the Act of April 26th 1855.

May 14th 1873.   Before READ, C. J., AGNEW, SHARSWOOD, WILLIAMS and MERCUR, JJ.

Appeal from the decree of the Orphans' Court of *Cumberland county* : No. 93, to May Term 1873.

The proceeding in this case arose under the wills and codicil of James Hamilton, deceased.

By his will called "A." dated November 20th 1871 ,amongst numerous legacies, he bequeathed and directed as follows, viz. :—

"I direct and authorize my executors hereinafter named or a

majority of them, or the survivor of them, to sell to the highest
and best bidder the three-story brick dwelling-house and store-room
now occupied by Mr. Charles Ogilby, and also the two-story brick
tenement part of which is rented to Mr. James Eakins, with the
outbuildings, yards, gardens, as is now included in the lease, to
said Charles Ogilby and said James Eakins, together with so
much of the corner lot at the intersection of Pitt and High street,
numbered eighty-five on the plot of the borough of Carlisle, county
of Cumberland, as is occupied at the present time by the aforesaid
Charles Ogilby and James Eakins, under the leases given them,
with all the buildings and appertenances. thereon situate, and to
make and execute deed to the purchaser or purchasers thereof as
fully as I might or could do, and on such terms as my said execu-
tors or a majority of them may think best, and the proceeds of
said sale shall be invested in government bonds to be deposited in
the bank or loaned on mortgage, and paid over to the .trustees of
the Second Presbyterian Church whenever the principal and inter-
est shall be sufficient to pay off the whole balance of indebtedness
of said corporation, with any other benefactions or contributions
of others for the new church and lecture-room now in process of
building."

Of this will he appointed Joseph A. Stuart and Abram Bosler
executors.

By his will called "B." dated January 13th 1873, he directed
as follows :—

"4. I authorize my executors hereinafter named or the survivor
of them, to sell to the highest and best bidder all that property
comprising the dwelling-house, store-room (a three-story brick
building,) and the two-story brick building adjoining, at the corner
of Pitt and High streets, in the borough of Carlisle, together with
the yards, garden and lot of ground, as now leased and occupied
by Mr. Charles Ogilby and James Eakins, under the leases given
them, and so much of said corner lot number eighty-five as is de-
signated in said leases and occupancy, together with the apperte-
nances thereto belonging ; and I authorize my said executors or the
survivor to make and execute deed or deeds to the purchaser or
purchasers as fully as I might or could do, and out of the proceeds
I direct my executors to pay off any indebtedness of the Second
Presbyterian Church, Carlisle, Penna., on the building recently
erected for worship on their lot, and the balance of the purchase-
money shall be invested on mortgage or other securities, as the
Orphans' Court of Cumberland county may direct, and the inter-
est applied annually to rent any vacant pews in such church edi-
fice—viz.: Second Presbyterian Church, Carlisle, as it will pay for
one-half of said pews to be appropriated to accommodate strangers,
and the other half for such members of the church as do. not feel
able to rent a whole pew for their families."

[Hamilton's Estate.]

Of this will he appointed Joseph Stuart and Abram Bosler executors.

By both wills he made Robert C. Bradish the residuary legatee. He also made a codicil, part of which is as follows.: * * *

" 5. I direct that six hundred and twenty-five dollars, which I have loaned to the " Fidelity Trust ·and Deposit Company," of Philadelphia, remain at 4 per cent. as at present, and the interest shall be received by the session of the Second Presbyterian Church, Carlisle, every two years, and request them to appoint some one who shall be allowed for his trouble whatever said session may think right, to have the Hamilton enclosure repainted, the tombstones cleaned, and the weeds removed.

" 6. Whereas, There is an Act of Assembly, rendering void all eleemosynary bequests and devises if not executed a certain number of days before the decease of the testator ; and, whereas, I executed a will dated the twentieth day of November, A. D. 1871. Now, I, James Hamilton, the testator, declare said will of 20th November, 1871, marked ' A,' to be my last will and testament, should I die before the 1st day of March 1873 ; otherwise the will of 13th of January 1873 shall be and is hereby declared to be my last will. Witness my hand and seal this —— day of January 1873.                        JAMES HAMILTON. [SEAL.]"

Mr. Hamilton died January 23d 1873.

The wills and codicil were admitted to probate by the register on the 29th of January 1873, and letters testamentary granted to Joseph A. Stuart and Abram Bosler.

On the 15th of April 1873, the Second Presbyterian Church in the borough of Carlisle petitioned the Orphans' Court of Cumberland county, setting out the provisions of the wills, and also the codicil.

The petition represented as follows :—

" It is believed that the property on the corner of Pitt and High streets in Carlisle, directed by the said James Hamilton to be sold, can be sold for a sum fully sufficient, and perhaps more than sufficient, fully to pay and discharge all the remaining indebtedness of your petitioner ; but the said Joseph A. Stuart and Abram Bosler have neglected to sell said property or to take any measures to carry out the directions of the said James Hamilton regarding the same.

" Your petitioner therefore prays that a citation may be issued, to the said executors directed, commanding them to show cause, if any they have, why your Honorable Court should not make an order and decree requiring them to make sale of the property aforesaid, in accordance with the directions of the said James Hamilton, deceased, and for such other and further relief as to your honors may seem meet."

[Hamilton's Estate.]

The executors filed an answer on the 26th of April 1873, setting out the wills, &c., and further that:—

" Your respondents are advised that, under the will dated the 20th of November 1871, marked A., and the codicil of the ―――― day of January 1873, in which testator declared said will of 20th November 1871, marked A., to be his last will and testament, should he die before the first day of March 1873, their authority to sell the lots, houses and buildings mentioned in said petition may be doubtful, and they are unwilling to proceed to sell the same without the direction and authority of this Honorable Court. And your respondents would further represent that the aforesaid Robert C. Bradish, son of Col. Jos. Bradish, may be interested as residuary legatee and devisee in the question presented to the court under the aforesaid will; that said Robert C. Bradish is a minor and has no guardian to take charge of his estate, and that he resides in England.

" They therefore pray your honors to make such order in the premises that the interest of the said Robert C. Bradish may be represented in court, before any order or decree touching the premises be made."

Joseph Bradish was appointed guardian *ad litem* of Robert C. Bradish, and Hugh Stuart was appointed guardian of his estate.

On the 10th of May 1873, the court (Junkin, P. J.) decreed that the " executors of James Hamilton, deceased, proceed in due time to sell the real estate mentioned in the seventeenth clause of the will of said testator, dated November 20th 1871, in accordance with the directions contained in said clause."

The executors, &c., of James Hamilton, and the guardians of Robert C. Bradish, appealed to the Supreme Court, and assigned the decree for error.

*M. C. Herman* and *J. H. Graham*, for appellants.—A codicil is a republication of the will to which it is attached: Alsop's Appeal, 9 Barr 381; Flintham *v.* Bradford, 10 Id. 82; Neff's Appeal, 12 Wright 509. A subsequent will repeals a prior one, although there be no revoking clause: Rudy *v.* Ulrich, 19 P. F. Smith 177.

*Henderson & Hays*, for appellees.—Where there are two wills, in some respects inconsistent, the latter revokes the former only so far as they are inconsistent with each other, unless there is an express clause of revocation: Price *v.* Maxwell, 4 Casey 23 ; Jones *v.* Murphy, 8 W. & S. 275; Catto *v.* Gilbert, 9 Moore P. C. C. 131; Freeman *v.* Freeman, 5 DeG., M. & G. 704; Harwood *v.* Goodright, Cowper 87 ; Duppa *v.* Mayo, 1 Saund. 276, f. note 4 on p. 278 h ; Flintham *v.* Bradford, 10 Barr 82. To constitute a valid revocation the revoking act must be done *animo revocandi:*

Boudinot *et al. v.* Bradford, 2 Yeates 170 ; Lawson *v.* Morrison, 2 Dall. 287 ; Burns *v.* Burns, 4 S. & R. 295 ; Irish *v.* Smith, 8 Id. 580.   A codicil is part of a will : Lovelass on Wills 371 ; Ram on Wills 263.   A codicil or will may depend on a contingency : Parson *v.* Lanoe, 1 Ves. Sr. 190 ; Sinclair *v.* Hone, 6 Ves. Jr. 608 ; Dougherty *v.* Dougherty, 4 Metc. 25 ; In re Winn, 7 Jurist N. S. 764 ; Roberts *v.* Roberts, 8 Id. 220 ; Todd's Will, 2 W. & S. 145.·   Cancelling a will brings a prior will not destroyed into operation : Goodright *v.* Glasier, 4 Burrows 2514 ; Harwood *v.* Goodright, Cowper 87.

The opinion of the court was delivered July 2d 1873, by

WILLIAMS, J.—It is clear that the testamentary paper of January 13th 1873, admitted to probate by the register, cannot be regarded as the will of James Hamilton.   It is not his will, for the contingency upon which it was to take effect never happened : Todd's Will, 2 W. & S. 145.   It was a provisional will, and was only to become operative if he did not die before the 1st of March 1873 ; if he did, it was to have no force or effect.   He died on the 23d of January 1873, and therefore, by the express provisions of the codicil to which it is subject, it did not take effect as his will.   If, then, it never had any force or validity as a will, did it revoke the will of the 20th November 1871, which was also admitted to probate by the register ?   It did not revoke it in express terms, for it contains no revoking clause.   It did not revoke it by implication, for the contingency upon which it was to take effect never happened.   If it did not take effect as a will, it did not take effect at all, and was as powerless to revoke the prior will as if it had never been made.   But if it had contained a revoking clause, it does not follow that it would have repealed the former will.   The fair construction in such case would be that the clause was intended only to operate if the paper took effect as a will ; but if not, then it was to have no effect : Rudy *v.* Ulrich, 19 P. F. Smith 177. If at the time the testator executed the paper of the 13th of January 1873, he did not intend that it should be his will if he died before the 1st of March, then it is clear that it did not revoke the will of the 20th of November 1871.   The codicil shows that he did not intend that it should be his will if he died before that time.   It is true that the codicil has no other date than that of the month and year ; but, in the absence of all evidence as to the precise time of its execution, the presumption is that it was executed at the same time with the paper of which it was intended to be part.   But whether it was executed at that time or on a subsequent day, its effect on the paper is the same.   It is an addition or supplement to it, and the whole must be construed together as one instrument.   Thus construed, can there be a doubt that the will of the 13th of January 1873 was intended to be provisional,

and that it was not to take effect if the testator died before the 1st of March following? The fallacy of the appellants' argument lies in the assumption that the will of the 20th of November 1871 was revoked *ipso facto* by the execution of the will of the 13th of January 1873. But it was not revoked unless the testator intended to revoke it, and in the face of the declaration in the codicil no inference that he intended to revoke it can possibly arise. There is no pretence that the codicil was intended as an addition or supplement to the prior will. It was manifestly intended to be a part of the latter will, and the sole purpose of its sixth item was to convert what would otherwise have been an absolute, into a conditional will. It changed the character of the instrument and prevented it from operating as a revocation of the former will. What rule or policy of law, then, prevents us from giving to it the effect which the testator intended that it should have? Why should it be so construed as to defeat the end for which it was designed? Whether the testator's gifts of charity stand or fall, it is clear that the will of the 20th of November 1871 must be regarded as his will. If not, then he left no will; but so to hold would shock all sense of right and justice. From what time, then, does it speak? It was never republished, for it was never revoked; and, therefore, it speaks from its date. And, if so, its bequests of charity are not avoided by the statute of 26th April 1855, which forbids such gifts within one month of the testator's decease. The decree of the Orphans' Court must, therefore, be affirmed.

> Decree affirmed, at the costs of the appellants to be paid out of estate of the testator.