ESTATE OF WILLIAM A. CAREY, DECEASED, THE MARINE NATIONAL BANK OF ERIE, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7882. Promulgated November 28, 1947.

Samuel Y. Rossiter, Esq., for the petitioner.
Stanley L. Drexler, Esq., for the respondent.

OPINION.

- HARRON, *Judge*: Section 812 (d) of the Internal Revenue Code, as amended,[1] allows deduction from the gross estate, for purposes of computing the value of the net estate for Federal estate tax, of the amount of bequests of a deceased person to any corporation organized and operated exclusively for religious and charitable purposes. The parties are agreed that the organizations named in decedent's will come within the provisions of the above code section. The only question is whether the value of the property received by the charitable and religious organizations is deductible from the gross estate under section 812 (d).

The decedent died within 30 days after executing the will. The bequests were, therefore, subject to the provisions of the Pennsylvania statute set forth in the margin,[2] which provides that bequests for reli-

---

[1] SEC. 812. NET ESTATE.

For the purpose of the tax the value of the net estate shall be determined, in the case of a citizen or resident of the United States by deducting from the value of the gross estate—

\*          \*          \*          \*          \*          \*          \*

(d) TRANSFERS FOR PUBLIC, CHARITABLE, AND RELIGIOUS USES.—The amount of all bequests, legacies, devises, or transfers (including the interest which falls into any such bequest, legacy, device, or transfer as a result of an irrevocable disclaimer of a bequest, legacy, devise, transfer, or power, if the disclaimer is made prior to the date prescribed for the filing of the estate tax return or, in the case of a decedent dying on or before October 21, 1942, if the disclaimer is made prior to September 1, 1944), to or for the use of the United States, any State, Territory, any political subdivision thereof, or the District of Columbia, for exclusively public purposes, or to or for the use of any corporation organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes \*  \*  \*. [As amended by section 408, Internal Revenue Act of 1942, and section 511, Internal Revenue Act of 1943.]

[2] Purdon's Pennsylvania Statutes Annotated, title 20, sec. 195 :

"Section 195. *Charitable bequests or devises requisites.*

"No estate, real or personal, shall be bequeathed or devised to any body politic, or to any person in trust for religious or charitable uses, except the same be done by will at least thirty days before the decease of the testator, which period shall be so computed as to exclude the first and to include the last day thereof; and all dispositions of property contrary hereto shall be void and go to the residuary legatee or devisee, heirs or next of kin, according to law. As amended, 1935, July 2, P. L. 573, section 1 ; 1939, May 16, P. L. 141, section 1."

gious or charitable uses made by will executed less than 30 days before the testator's death "shall be void and go to the residuary legatee or devisee, heirs or next of kin, according to law." Petitioner contends in this Court, first, that the provisions in the will were effective to transfer to the charities the property received by them, upon the prompt execution of the agreement of the four residuary legatees and the filing thereof in the orphans' court. The petitioner's argument is that the Pennsylvania statute,[2] P. L. 141, May 16, 1939, can be construed by courts of Pennsylvania, under certain circumstances, to mean that the bequests in the will are voidable but not absolutely void. The circumstances under which such interpretation can be made, according to petitioner's argument, are when all those named in the statute, residuary legatees, heirs, or next of kin waive transfer of property to them by written waivers or agreement among themselves and do not object at the hearing on the executor's petition for a decree of distribution in accordance with the terms of the will. In support of this theory, petitioner has offered a supplemental opinion of the orphans' court dated February 5, 1947.

Petitioner seems to take the position that the view expressed by the orphans' court in its supplemental opinion is not in conflict with the interpretations of the Pennsylvania statute which have been made by Pennsylvania courts in many decisions.[3] Petitioner's second contention is that the question of deductibility is a question of Federal law, and as such should be decided in petitioner's favor.

Respondent contends, *inter alia*, that the bequests were absolutely void and that the property vested in the residuary legatees, so that the charities took from them, with the result that the transfers to the charities do not come within section 812 (d) as a matter of Federal law.

The Pennsylvania statute, P. L. 141, originally enacted in 1855, has stood, with amendments, in much the same form as first enacted for a period of 92 years. The suggestion that the meaning of the statute is not yet settled is unusual, but it is observed that other taxpayers in Pennsylvania are making the same suggestion as this petitioner has made in this Court. See *Selig* v. *United States,* 73 Fed. Supp. 886, where the plaintiffs contended that bequests to charities were not void, but merely voidable or unenforceable. The District Court rejected the suggestion, as does this Court. The bequests to the charities were void and by operation of the statute the residuary legatees became vested upon the death of the testator with the property described in clauses IV, V, VI, and VII of the decedent's will. *In re Conrad's Estate,* 341 Pa.

[3] *In re Arnold's Estate,* 249 Pa. 348; 94 Atl. 1076, and cases cited therein; *In re Hartman's Estate,* 320 Pa. 321, 336; 182 Atl. 234, and cases cited therein; *In re Conrad's Estate,* 341 Pa. 451; 19 Atl. (2d) 379.

451; 19 Atl. (2d) 379; *In re Arnold's Estate*, 249 Pa. 348; 94 Atl. 1076; *In re Hartman's Estate*, 320 Pa. 321; 182 Atl. 234.

The supplemental opinion of the orphans' court entered on February 5, 1947, contains a construction of P. L. 141, as it applies to the particular clauses of the will, which is contrary to the settled construction. The act must be literally construed and any construction to save the charitable bequests is not permitted. *In re Hartman's Estate, supra.* According to *Conrad's Estate, supra,* the argument that the agreement or waivers of the four residuary legatees operated to deflect vesting in them of the property received by the charities would fail on appeal to the Pennsylvania Supreme Court.

The supplemental opinion of the orphans' court can not be given the effect desired by petitioner by this Court in its consideration of the question of Federal law. It was not an adjudication of interests in part of the property of the testator as between the residuary legatees and the charities named in the will. There was no contest between the two groups in the orphans' court. The decree of distribution of the orphans' court, dated March 29, 1944, was only a *pro forma* approval of the executor's account and of distribution to the charities under the "agreement" (using the term adopted by the orphans' court) of the residuary legatees. See *First Mechanics National Bank* v. *Commissioner*, 117 Fed. (2d) 127; *Commissioner* v. *Child's Estate*, 147 Fed. (2d) 368. Cf. *Estate of Sallie Houstan Henry*, 47 B. T. A. 843, 849.

Petitioner contends, further, that the question of deduction from gross estate under section 812 (d) of the Internal Revenue Code is a question of Federal law. With that contention we agree. But it does not follow that the deduction is allowable.

Petitioner apparently contends that, since the residuary legatees agreed that the exact property described in the decedent's will could go to the charities named therein, and the orphans' court approved the executor's account showing distributions to the charities, the decision of the Federal question should be to allow deductions for such distributions under section 812 (d). Petitioner relies upon *Dumont's Estate* v. *Commissioner*, 150 Fed. (2d) 691, and *Lyeth* v. *Hoey*, 305 U. S. 188, which was followed in *Dumont's Estate*. Petitioner refers to the second paragraph in the syllabus of *Dumont's Estate*.

Evidently petitioner fails to perceive the meaning of the proposition that a question which is presented under various provisions of the Federal revenue acts, under the distinct facts of each case, is a question of Federal law. That proposition was stated, for example, in *Robbins* v. *Commissioner*, 111 Fed. (2d) 828 (see syllabus 5th paragraph), where deductions for property received for educational purposes was denied, and where the reasoning in *Lyeth* v. *Hoey* was considered as inapplicable. Petitioner is relying upon the agreement of the four residuary

legatees in its argument that deductions are allowable under section 812 (d), as a matter of Federal law. But the differences in the facts of this case and in the facts of *Dumont's Estate* and *Lyeth* v. *Hoey*, *supra*, are easily discernible, and we need not undertake to delineate them. In this case, as in the two cases above cited, agreements were made, but in the two cited cases the agreement settled actual contests and "charities" had a status under local law which the "charities" in this case do not have. Thus, in the *Lyeth* case the petitioner had a standing as an heir under local law and made his claim in that capacity, and, as the Circuit Court stated in *Dumont's Estate*, "it was deemed immaterial that he had acquired his portion by compromise agreement instead of by judgment." In *Dumont's Estate*, Lafayette College based its claim upon an earlier will and contended that a later will should be rejected in its entirety, and the Circuit Court stated, "What Lafayette College received came to it under an agreement settling rival claims under two different wills, so that it did not really take as purchaser under a void bequest." However, in this case there was no agreement between the four charities and the four residuary legatees settling any rival claims; the four charities had no standing under the will under local law, the construction of P. L. 141 having become a rule of property under local law (*In re Hartman's Estate*, *supra*) ; and the four charities received property under an agreement among the four residuary legatees, who became vested with the property by operation of P. L. 141, which made the bequests void and fixed the vesting of the property. In this situation, the question of Federal law, under section 812 (d) of the Internal Revenue Code, has been settled in prior cases. Thus, in *Robbins* v. *Commissioner*, *supra*, it was held by the Circuit Court that property which Amherst College received through the making of a compromise agreement could not be regarded as a "bequest" from the testator within the meaning of section 303 (a) (3) of the Revenue Act of 1926, as amended (substantially the same as section 812 (d) of the Internal Revenue Code), because "whatever rights Amherst College has come to it through the compromise agreement and not under the will of the testator." And in *Watkins* v. *Fly*, 136 Fed. (2d) 578, the question of Federal law, under the same provision of the revenue act, was determined upon consideration of whether property received by "charities" passed as a *bequest* under the testator's will, and it was held that there was no *bequest* by the decedent and, therefore, there could be no deduction for charitable bequests.

In this case, the question of Federal law is whether the properties received by the four charities were "bequests, legacies, devises, or transfers" from the decedent within the meaning of section 812 (d) of the Internal Revenue Code. The holding is that there were no

bequests, etc., from the decedent because four provisions in his will were void, and that what went to the charities went to them through the agreement of the residuary legatees and not under the will of the testator. Therefore, the deductions claimed are not allowable under section 812 (d).

There remains the question of whether the amendments to section 812 (d), set forth in parentheses, provide the relief from estate tax which is claimed. This question was considered in *Selig* v. *United States, supra,* and the contention was rejected. However, the facts in that case differ from the facts here, and we consider the question under the facts of this case. This question is answered by the holding made above, that there were no bequests from the decedent within the meaning of section 812 (d). The residuary legatees could not bring about transfer of the property as a *bequest* under the decedent's will by making agreement of disclaimer. See *In re Conrad's Estate, supra.* In the absence of a bequest by the decedent under his will, there being no bequest because of the provisions of the Pennsylvania statute, P. L. 141, the agreement by the residuary legatees can not represent "disclaimer" as that term was meant in section 812 (d). The amendment to section 812 (d) can not come into operation unless the first condition is present, namely, that there is a bequest by the decedent for charitable purposes. We think this is evident from the Committee reports.[4] Furthermore, in this case, it was by operation of the Pennsylvania statute, P. L. 141, that the property in question vested in the residuary legatees named in the will, rather than by any provision of the decedent in his will.

The statutes of Georgia and Ohio which were involved in the cases of *First National Bank of Atlanta* v. *Commissioner*, 102 Fed. (2d) 129, and *Estate of Dudley S. Blossom,* 45 B. T. A. 691, have been construed by the courts of those states, respectively, to make

---

[4] Report No. 2333 (Committee on Ways and Means), 77th Cong., 2d sess., p. 166 :

"SECTION 408. DEDUCTION FOR DISCLAIMED LEGACIES PASSING TO CHARITIES

"Under existing law a deduction for a bequest, legacy, devise, or transfer for charitable and related purposes within the meaning of section 812 (d) or 861 (a) (3) of the Code is not allowable to the extent that the decedent empowers another to divert such bequest, legacy, devise, or transfer to another purpose. Moreover, it is not clear whether a deduction of the value of the residuary estate bequeathed or devised for charitable and related purposes includes an amount disclaimed by a specific beneficiary and therefore falling into the residuary estate. In both cases a deduction should be allowed in the full amount passing for charitable and related purposes if the disclaimer of the power or of the specific bequest or devise is prompt. This section therefore amends sections 812 (d) and 861 (a) (3) to assure this result, if there is an irrevocable disclaimer prior to the date prescribed for the filing of the estate tax return. Under the regulations this date occurs 15 months after the date of death of the decedent. A disclaimer is a complete refusal to accept the rights to which one is entitled. If the beneficiary uses these rights for his own purposes, as by receiving a consideration for his formal disclaimer, he has not refused the rights to which he was entitled. There can be no disclaimer after an acceptance of such rights, expressly or impliedly.

*　　*　　*　　*　　*　　*　　*"

See also Report No. 1631 (Committee on Finance), 77th Cong., 2d sess., p. 240 ; sec. 408 Revenue Bill for 1942.

charitable bequests under a will which comes within the provisions of the particular statutes as voidable rather than void. The cases above cited are, therefore, distinguishable from this case.

The respondent's determination is sustained.

Reviewed by the Court.

*Decision will be entered for the respondent.*