458 So.2d 163 (1984)
SUCCESSION OF Doris DITTMAR, Widow of Elroy L. Quinn.
No. 83-CA-845.
Court of Appeal of Louisiana, Fifth Circuit.
October 11, 1984.
*164 James P. Magee, New Orleans, for appellant.
Bernard J. Rice III, and Stumpf, Dugas, LeBlanc, Papale & Ripp, Harry C. Stumpf, Gretna, for appellees.
Before BOWES, GRISBAUM and DUFRESNE, JJ.
GRISBAUM, Judge.
The central issue in this succession case is whether the trial court erred in ordering a son to collate $61,258.13 to his mother's succession. After the matter was submitted by stipulation and briefs, the trial court ordered Clifford C. Quinn (the son) to collate $61,258.13 to the estate of Doris Dittmar Quinn (his deceased mother). It recognized that all the children were in possession of the estate of their father, Elroy L. Quinn, by a judgment of possession signed April 30, 1953 and amended October 16, 1953. Finally, it declared that all the money due the heirs from their father's estate must be derived from the estate of Doris Dittmar Quinn. From this judgment, Clifford C. Quinn appeals.
On March 18, 1983, the succession representative for the succession of Doris Dittmar Quinn (wife of Elroy L. Quinn, Sr. and mother of Clifford C. Quinn) filed a motion for collation and for filing a tableau of distribution identifying certain advances made to Clifford Quinn by Mrs. Quinn (his mother) during her lifetime. On March 21, 1983, Florence Turberville and Helene Stewart (daughters of Mrs. Quinn and sisters to Clifford) filed a motion for collation and for filing a tableau of distribution. On April 27, 1983, Clifford responded by filing a rule to show cause why his portion of his father's succession should not be delivered to him. These motions were heard on June 17, 1983 with the facts stipulated to by all parties.
On October 3, 1983, the Court denied Clifford C. Quinn's rule to compel the succession representative of the succession of Mrs. Quinn to deliver his portion of Mr. Quinn's succession and held that Clifford C. Quinn must collate the amount of $61,258.13. After the trial court denied Clifford C. Quinn's request for a new trial, he filed this appeal.
The parties' stipulation of facts, in pertinent part, states:
In 1950, Mr. Elroy L. Quinn, Sr., died intestate. Mr. Quinn was survived by his spouse, Mrs. Doris Dittmar Quinn, and their five children: Elroy L. Quinn, Jr., Clifford C. Quinn, Florence Quinn, widow of Carl H. Turberville, Helene Quinn, divorced wife of Sidney Stewart, and Eveline Quinn, wife of Paul P. Arnold. On April 30, 1953, Mrs. Quinn and the children were granted a Judgment of Possession in Mr. Quinn's succession. On October 16, 1953, that Judgment was amended to reflect an additional piece of *165 property which had been accidentally left out of the original Judgment....
Under the Judgment of Possession, Mrs. Doris Dittmar Quinn, widow of Elroy L. Quinn, Sr., was recognized as the surviving spouse in community. As such, she received title to her undivided one-half share of the community with a legal usufruct over the remainder of the community. The naked ownership of Mr. Quinn's share of the community went to the children.
Subsequent to the Judgment of Possession in 1953, Mrs. Quinn or her estate, with the joint participation of her children, sold all of these properties...
In each of these [sale] transactions, either Mrs. Quinn or her estate asked for and received the consent of the children in their capacities as naked owners before she died and as full owners after she died. That is, all five of the Quinn children signed the Acts of Sale. However, at the time of the sales, no proceeds were distributed to the children. Either Mrs. Quinn or her estate retained all the funds.
The total amount received in connection with the ... [sale] transactions was $135,600.00. Adding to this sum the cash included in Mr. Quinn's succession ($1,818.65), the total value of the community existing between Mr. and Mrs. Quinn equalled $137,418.65. Thus, the children's share of the community amounted to $68,709.33, and the interest of each of the five children was worth $13,741.87.
On December 8, 1977, Mrs. Quinn died while domiciled in Jefferson Parish, Louisiana.
For purposes of this Stipulation, Clifford C. Quinn admits that during his mother's lifetime, he received from his mother advances amounting to at least $75,000.00. These advances were evidenced by a promissory note dated May 31, 1972.... Clifford did not make any payments on this note. In 1973, Mrs. Quinn filed suit on the promissory note, but the suit was dismissed by Mrs. Quinn, without prejudice, on October 2, 1973.
On appeal, Clifford C. Quinn assigns as error:
The court erred in failing to order the Succession of Doris Dittmar Quinn to deliver to Clifford C. Quinn the sum of $13,741.87 plus legal interest from the date of Mrs. Quinn's death, which represents Clifford C. Quinn's portion of Elroy L. Quinn Sr.'s succession.
Three issues are presented:
(1) Whether the trial court erred in ordering Clifford C. Quinn to collate $61,258.13 to the estate of Doris Dittmar Quinn?
(2) Whether Clifford C. Quinn is entitled to legal interest from the date of the mother's death on the sums owed to him for his portion of the father's estate?
(3) Whether the trial court erred in finding that the money to the heirs from their father's estate must be derived from the estate of their mother?
ISSUE ONE: COLLATION
The trial court's judgment required Clifford C. Quinn to collate $61,258.13[1] to the estate of his mother. The question presented in this appeal is whether the trial court's requiring a collation at this stage in the proceedings was correct. We find it was not.
The Louisiana Civil Code provides that among forced heirs equality of inheritance is presumed unless their ancestor expresses an unequivocal intent to favor one or more of them with all or part of the disposable portion. Louisiana Civil Code articles 1229-33, 1501. Collation (the supposed or real return to the mass of an ancestor's succession which a forced heir makes of gratuities which are not intended as advantages from the disposable portion) is the means by which this equality is enforced. *166 Louisiana Civil Code articles 1227, 1231; Succession of Webre, 247 La. 461, 172 So.2d 285, 289 (1965). Article 1227 of the Civil Code defines collation to be:
... the supposed or real return to the mass of the succession which an heir makes of property which he received in advance of his share or otherwise, in order that such property may be divided together with the effects of the succession. (Emphasis added)
Succession of Webre explains, "It arises from an obligation, or duty, imposed upon the heir by law[2]." Webre, 172 So.2d 285, 289.
Collation is an incident to the action of partition of succession property among the heirs. See Lamotte v. Martin, 27 So. 291, 293 (La.1899). Louisiana Civil Code Chapter 12 on the Partition of Successions which follows the chapter on collation includes detailed provisions for effecting the rules of collation. It cannot be determined whether a collation debt may be due until the value of the estate as a whole is finally fixed in the succession proceedings and action is taken to have the succession property partitioned. See Louisiana Civil Code articles 1355-56.
In this case, although the succession representative has filed a calculation of the active mass, there is no indication that it was judicially approved. There is no question Clifford received advances. By stipulation, he admits to advances amounting to at least $75,000. Moreover, the effect, if any, of the parties' stipulation that Clifford received advances of at least $75,000 on the calculation of the active mass has not been decided. Until there is a proper calculation of the active mass, it cannot be ascertained whether Clifford actually "owes" his mother's succession a collation debt. The trial court, thus, erred in requiring Clifford to collate $61,258.13. We remand this matter to the trial court for proper calculation of the active mass and for a determination of the amount Clifford owes, if any, to his mother succession in order to equalize the heirs' portions.
ISSUE TWO: LEGAL INTEREST
Because legal interest was not demanded in Clifford Quinn's "Rule to Show Cause," Clifford cannot on appeal raise this issue for the first time and receive legal interest on his portion of his father's succession. Louisiana Code of Civil Procedure article 1921. Louisiana Code of Civil Procedure article 1921 provides:
The court shall award interest in the judgment as prayed for or as provided by law. (Emphasis added)
See Succession of Mulqueeny, 253 La. 595, 218 So.2d 607 (1969).[3]
ISSUE THREE: THE NATURE OF A USUFRUCT
We find that the trial judge was correct in ruling that the money due the heirs from their father's estate must be derived from the estate of their mother, Doris Dittmar Quinn. Mrs. Quinn became usufructuary of the properties in the succession of Mr. Quinn, and, as these properties were sold with the consent of the children, she retained the usufruct over the money derived from those sales. Civil Code article 538 states:

*167 If the things subject to the usufruct are consumables, the usufructuary becomes owner of them. He may consume, alienate, or encumber them as he sees fit. At the termination of the usufruct he is bound to pay to the naked owner either the value that the things had at the commencement of the usufruct or deliver to him things of the same quantity and quality.
Mrs. Quinn's usufruct terminated upon her death, at which time her estate became obligated to account to these heirs as naked owners. Therefore, Clifford Quinn's claim for funds from his father's estate over which Mrs. Quinn exercised a usufruct is properly a claim against the mother's succession.
DECREE
For the reasons assigned, we set aside that part of the trial court's judgment which orders Clifford C. Quinn to collate $61,258.13, and we remand this matter to the Twenty-Fourth Judicial District Court of the Parish of Jefferson for further proceedings according to law and consistent with the views herein expressed. We affirm that part of the trial court judgment which finds all parties are in possession of the estate of their father, Elroy L. Quinn, and which holds the money due the heirs from their father's estate must be derived from the estate of Doris Dittmar Quinn. All costs of this appeal are to be divided equally among the parties, but the assessment of other costs is to await the final disposition of the case.
AFFIRMED IN PART, SET ASIDE IN PART, AND REMANDED.
NOTES
[1] This amount is derived from the difference between the stipulated $75,000 which represents the minimum amount of advances Clifford received from his mother prior to her death and $13,741.87, the amount owed Clifford from his father's succession.
[2] Under Louisiana Civil Code article 1237, the heir may release himself from his duty by renouncing the succession. Article 1237 states:

If children, or other lawful descendants holding property or legacies subject to be collated, should renounce the succession of the ascendant, from whom they have received such property, they may retain the gift, or claim the legacy to them made, without being subject to any collation.
If, however, the remaining amount of the inheritance should not be sufficient for the legitimate portion of the other children, including in the succession of the deceased the property which the person renouncing would have collated, had he become heir, he shall then be obliged to collate up to the sum necessary to complete such legitimate portion. (Emphasis added)
See also Louisiana Civil Code articles 1251, 1277-78, 1285-86, and 1288.
[3] In Mulqueeny, the Supreme Court reversed a court of appeal decision which allowed legal interest from date of judicial demand because legal interest was not prayed for. Mulqueeny, 218 So.2d 607, 610.