385 So.2d 919 (1980)
SUCCESSION of Edwin Lamar RAMSEY, Kenneth William Mitcham, Provisional Administrator, Plaintiff-Appellee,
v.
Ray Samuel RAMSEY and James K. Ramsey, Defendants-Appellants.
No. 14195.
Court of Appeal of Louisiana, Second Circuit.
June 10, 1980.
*920 Meadors & Meadors by George H. Meadors, Homer, for plaintiff-appellee.
Smitherman, Lunn, Hussey & Chastain by W. James Hill, III, Shreveport, for defendants-appellants.
Before MARVIN, JASPER E. JONES and FRED W. JONES, JJ.
JASPER E. JONES, Judge.
Kenneth W. Mitcham, grandson of the decedent, Edwin Lamar Ramsey, sues for collation and an accounting to be made by Ray S. Ramsey and James K. Ramsey, sons of the deceased.
Edwin Ramsey died, leaving as his forced heirs his two sons and his grandson, who was forced heir by representation of his mother, the decedent's daughter. Prior to his death, decedent had donated to his sons a 1/3 interest each in a 168½ acre tract located in Claiborne Parish. Decedent retained the remaining 1/3 interest. Decedent died in 1977 in Texas leaving a valid will, which was admitted to probate in Texas and Louisiana. In this will, decedent left Kenneth $7,000 and left all remaining property to Ray and James. The 168½ acre tract in Claiborne Parish is the principal succession asset in Louisiana. Since the inter vivos donations were made in 1976, Ray and James have received oil and gas royalties from production attributable to their 2/3 interest in the tract. They have also been paid all royalties for their 2/3 interest from the decedent's death in 1977 up until the present. The royalties due for the decedent's 1/3 interest were also paid to Ray and James until February 1978 (gas) and March 1978 (oil). The payment of these royalties was suspended by the oil company following these dates and the funds have since been held by the oil company.
Plaintiff's suit sought to compel defendants to collate the property donated to them *921 by decedent and to account for all oil and gas royalties received by them since the time of the donations (May 1976). The suit was filed more than one year after the death of decedent.
Ray and James answered the petition admitting that collation was due but alleged that Kenneth's forced portion is 2/9ths (1/3 of 2/3) interest in decedent's succession and this is the total amount he is entitled to. Defendants alleged they desire to collate their donations by taking less in decedent's Louisiana succession, which could be accomplished, since the succession owns a 1/3 interest in the Louisiana property. The defendants further asserted that under LSA-C.C. Article 1515[1] plaintiff is not entitled to oil and gas royalties produced from his legitime until he made formal demand for his forced portion in June 1979.
The judgment appealed from recognized that Kenneth was entitled to a 2/9ths interest in the Claiborne Parish tract and to all oil and gas royalties attributable to the 2/9 ths interest in this land since decedent's death in September, 1977. The trial court also ordered Ray and James to render an accounting to plaintiff as Provisional Administrator of all oil and gas royalties they have received since decedent's death attributable to the 1/3 interest in the tract, which is the interest in the tract that belonged to the decedent at the time of his death.
Defendants appealed. Plaintiff neither appealed nor answered the appeal. Defendants assign no error to the provisions in the judgment recognizing plaintiff is entitled to a 2/9ths interest in the tract of land as his legitime and they recognize he is entitled to receive the oil and gas royalties from this interest from the date of the suit.
The issues on appeal are (1) whether Ray and James must account to plaintiff as Provisional Administrator, for all the oil and gas royalties they have received since decedent's death attributable to decedent's 1/3 interest in the land, and (2) whether Kenneth is entitled to the royalties accruing on his legitime (2/9ths interest in the land) since the date of decedent's death or whether he is only entitled to these funds from the date of his suit.
ARE DEFENDANTS REQUIRED TO ACCOUNT TO THE PROVISIONAL ADMINISTRATOR FOR ALL FUNDS RECEIVED FROM THE 1/3 INTEREST IN THE PROPERTY BELONGING TO THE SUCCESSION?
The decedent's will appointed Ray executor and he qualified as executor on October 5, 1977 in the Texas probate proceeding wherein the will was probated. In this proceeding he recognized that a Louisiana administration would be required.
"The property in Louisiana consists of real property including property under oil, gas and mineral production incidental to which ancillary administration will have to be later undertaken in Claiborne Parish, La."
A Louisiana succession proceeding is provided for a non-resident who dies leaving property situated in Louisiana by CCP 3401[2]. An executor who qualifies in a court outside of Louisiana may not act with respect to property situated in Louisiana until he qualifies as a succession representative in a court of competent jurisdiction in Louisiana. CCP 3402.[3] Kenneth qualified as provisional administrator of his grandfather's succession under the provisions of *922 CCP 3111[4] on April 14, 1978. Though defendants probated their father's will in Louisiana on November 13, 1979, after this suit was filed, Ray has never qualified in Louisiana as the succession representative.
Subject to exceptions not here applicable, a provisional administrator has the same duties and obligations as an administrator. CCP 3112.[5]
Kenneth, as succession representative, is entitled to possession of all succession property, including all revenues that it has produced as he has the duty to preserve them and deposit them in a bank account in his official capacity. CCP 3211[6], 3221[7], 3222[8].
Though the record does not establish that debts must be paid in connection with this succession, it seems abundantly clear that attorney's fees and taxes will have to be paid, which will require action by the provisional administrator. Ray's Texas probate proceedings recognized the necessity of a Louisiana ancillary administration. The provisional administrator is entitled to possession of the oil and gas royalties that were collected by these defendants, belonging to the succession.
Even if there were no debts to be paid and these defendants would eventually be entitled to the ownership of all the royalties collected by them on succession property, the succession representative is still entitled to possession of these funds until the defendants are recognized as owners of these funds and sent into possession of them by a judicial order. Simpson v. Colvin, 138 So.2d 438 (La.App. 3rd Cir. 1962).
There is no error in that part of the judgment appealed from recognizing the provisional administrator as being entitled to possession of all royalties produced from the 1/3 of the property belonging to the succession and requiring the defendants to account for the part of these funds collected by them and to turn over these funds to Kenneth Ray Williams, in his capacity as provisional administrator of the succession.
IS PLAINTIFF ENTITLED TO THE ROYALTY FUNDS PRODUCED FROM HIS LEGITIME FROM THE DATE OF HIS GRANDFATHER'S DEATH OR ONLY FROM THE DATE OF HIS SUIT?
The decedent bequeathed unto his two sons his remaining one-third interest in the *923 land on which there was mineral production. This legacy exceeded the disposable portion and was subject to an action of reduction by the decedent's grandson.
The rights of the forced heir to the fruits from his legitime under these circumstances are set forth in CC 1515:
"The donee restores the fruits of what exceeds the disposable portion only from the day of the donor's decease, if the demand of the reduction was made within the year; otherwise from the day of the demand."
The jurisprudence has construed this article to provide that when the demand for reduction is made within one year of the death of the testator the forced heir is entitled to the income from his legitime from the date of donor's death. The cases hold that when the forced heir makes his demand for reduction more than one year after the death of the donor he is only entitled to the income on his legitime from the date of demand and the legatees of the legitime are entitled to the right to retain the fruits produced until demand is made.

Cox v. Von Ahlefeldt, 30 So. 175, 105 La. 543 (1900);

Clark v. Hedden, 109 La. 147, 33 So. 116 (1902);

Succession of Mulqueeny, 253 La. 595, 218 So.2d 607 (1969);

Alexander v. Alexander, 357 So.2d 1260 (La.App. 2d Cir. 1978).
The present action commenced as a demand for collation of two inter vivos donations wherein the decedent gave to each of his two sons a one-third interest in the subject property with no indication that it was to be considered as an extra portion but the tenor of the proceedings was treated by the defendants as an action for a reduction of an excessive donation by their answer wherein they agreed to accept less from their father's will in order to give the plaintiff his legitime, rather than collate the inter vivos donations. Plaintiff and defendants stipulated that this manner of resolving plaintiff's claim to his legitime was agreeable and defendants in brief concede plaintiff is entitled to royalty income from the legitime from the date of his suit for collation. We therefore find the demand for collation was synonymous with a demand for reduction and conclude plaintiff is entitled to the royalty income from the date he sued for collation.
Plaintiff contends that CC 1515 is only applicable to inter vivos donations and for this reason the defendants as donees under the last will and testament are not entitled to the revenues from plaintiff's legitime for the period of approximately 22 months between the date of the testator's death and the plaintiff's suit for reduction. Plaintiff cites no authority for this contention and our review of the jurisprudence establishes that the courts have applied this article to donations inter vivos and mortis causa without distinction. We find no merit in this contention. In the Succession of Mulqueeny, supra, we find the following statement:
"Civil Code Article 1515, which we hold to be applicable to donations both inter vivos and mortis causa, requires the donee to restore to the forced heir the fruits of that which exceeds the disposable portion from the date of the donor's death until delivery if demand is made within one year. Since the forced heir here has made demand within the year, not only was her legitime to be delivered but the fruits on that legitime from the moment of death until delivery must be restored." (218 So.2d p. 609)
The plaintiff argues that under the provisions of CC 1607 he has been in possession of his legitime since the date of his grandfather's death and for this reason he is entitled to the fruits from the legitime since that date. This article reads as follows:
"When, at the decease of the testator, there are heirs to whom a certain proportion of the property is reserved by law, these heirs are seized of right, by his death, of all the effects of the succession, and the universal legatee is bound to demand of them the delivery of the effects included in the testament."
Plaintiff also cites CC Article 1608, *924 "Nevertheless in the same case, the universal legatee will have the enjoyment of the effects included in the testament, from the day of the decease, if the demand for the delivery has been made within a year from that period; if not, enjoyment will only commence from the day of the judicial demand, or from the day on which the delivery has been agreed upon,"
and contends there has been no demand by the appellants as legatees under the will for delivery of the bequest and for this reason the appellants cannot be entitled to possession of the fruits from the legitime for the period between the date of death and date of demand.
The plaintiff has cited no cases as authority for the application of the cited articles to the circumstances in the manner contended. We have found no cases directly in point but we find the case of Cox v. Von Ahlefeldt, supra, indirectly answers the plaintiff's contentions. In this case plaintiffs were attempting to avoid a five year plea of prescription (CC 3542) to their action to reduce an excessive donation based upon the contention that the forced heir had been vested with seisin from the death of the testator under the provisions of CC 1607. The court quoted CC Articles 940[9], 1502[10], 1504[11], and 3542[12] for the proposition that the donee had immediate possession of the property given because the donation was not null but only reducible and refused to apply the literal language of Article 1607, stating that to do so would "practically eliminate from our law the other provisions quoted." The court held:
"... the Civil Code of this State has been interpreted to mean that the ownership and seisin of the forced heir is so far qualified that the testamentary donee of an interest including or impinging upon his legitime may lawfully hold possession as owner until such forced heir demands the reduction of the donation." (30 So. p. 214)
The court was recognizing: that under the provisions of CC 940 the "testamentary heirs and universal legatees" were "called by law to the inheritance, immediately after... death" that though donations be excessive they are effective and not null (CC 1502) and are only subject to a demand for reduction (CC 1504). The court concluded that the provisions of these articles were paramount over CC 1607.
We conclude plaintiff's contention that CC 1607 and 1608 are here applicable is contrary to the cited jurisprudence construing CC 1515 and contrary to the rationale of Cox v. Von Ahlefeldt and for these reasons reject plaintiff's argument.
The plaintiff further contends that until there has been a judgment of possession recognizing the excessive donation and sending the legatees into possession, the legatees cannot be entitled to retain the fruits even though demand for the legitime was made more than one year after the testator's death.
*925 Plaintiff cites no authority for this contention and CC Article 1515 does not contain as a condition precedent to the donee's right to retain the fruits under these circumstances that he has been sent into possession and none of the cases have made such a requirement. In Cox v. Von Ahlefeldt, supra, the legatees were not sent into possession by judgment and yet the forced heir was limited to the income of the legitime from date of demand. The court there said, "But, inasmuch as the defendants in their capacity of universal legatees, were owners, entitled to possession of the property until demand was made upon them by plaintiffs, claiming in the right of the forced heir, they are liable for rents only from date of such demand." (30 So. p. 217)
We find that even though there has been no judgment of possession, the defendants are entitled to the income from plaintiff's legitime until the date plaintiff sued for collation and we amend the last paragraph of the judgment to read as follows so as to reflect this conclusion:
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that KENNETH WILLIAM MITCHAM, forced heir of the decedent, is entitled to a 2/9ths interest in said 168½ acre tract of land and any other Louisiana immovable property comprising the decedent's estate and succession, as his legitime, together with all revenues, rents, oil and gas royalties, and other benefits of every nature and description accruing from said property since June 11, 1979.
We remand the case in order that the Provisional Administrator may discharge his duties and administer the succession in accordance with law and, at the appropriate time after payment of legal charges, distribute the succession assets to the heirs in the fractional proportions mandated by and consistent with this opinion.
NOTES
[1] Art. 1515.

The donee restores the fruits of what exceeds the disposable portion only from the day of the donor's decease, if the demand of the reduction was made within the year; otherwise from the day of the demand.
[2] Art. 3401.

When a nonresident dies leaving property situated in this state, a succession proceeding may be instituted in a court of competent jurisdiction in accordance with Article 2811.
Except as otherwise provided in this Title, the procedure in such a succession shall be the same as provided by law for the succession of a Louisiana domiciliary.
[3] Art. 3402.

A succession representative appointed by a court outside Louisiana may act with respect to property situated in Louisiana only after qualifying in a court of competent jurisdiction in Louisiana. He shall furnish bond upon the application of any interested person for good cause shown in the same amount as an administrator, even though in the case of a testamentary succession the testament dispenses with bond.
After such qualification the succession representative may exercise all of the rights and privileges of and has the same obligation as a succession representative originally qualified in Louisiana.
[4] Art. 3111.

The court may appoint a provisional administrator of a succession, pending the appointment of an administrator or the confirmation of an executor, when it deems such appointment necessary to preserve, safeguard, and operate the property of the succession. On the application of an interested party, or on its own motion, when such an appointment is deemed necessary, the court may appoint a qualified person as provisional administrator forthwith.
[5] Art. 3112.

A provisional administrator shall furnish security and take the oath of office required by Articles 3152 and 3158, respectively. He shall continue in office until an administrator or executor has been qualified, or until the heirs or legatees have been sent into possession.
Except as otherwise provided by law, a provisional administrator has all of the authority and rights of an administrator, and is subject to the same duties and obligations, in the discharge of his functions of preserving, safeguarding, and operating the property and business of the succession.
[6] Art. 3211.

A succession representative shall be deemed to have possession of all property of the succession and shall enforce all obligations in its favor.
[7] Art. 3221.

A succession representative shall preserve, repair, maintain, and protect the property of the succession.
[8] Art. 3222.

A succession representative shall deposit all moneys collected by him as soon as received, in a bank account in his official capacity, in a state or national bank in this state, and shall not withdraw the deposits or any part thereof, except in accordance with law.
On failure to comply with the provisions of this article, the court may render a judgment against the succession representative and his surety in solido to the extent of twenty percent interest per annum on the amount not deposited or withdrawn without authority, such sum to be paid to the succession. He may also be adjudged liable for all special damage suffered, and may be dismissed from office.
[9] Art. 940.

A succession is acquired by the legal heir, who is called by law to the inheritance, immediately after the death of the deceased person to whom he succeeds.
This rule applies also to testamentary heirs, to instituted heirs and universal legatees, but not to particular legatees.
[10] Art. 1502.

Any disposal of property, whether inter vivos or mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that quantum.
[11] Art. 1504.

On the death of the donor or testator, the reduction of the donation, whether inter vivos or mortis causa, can be sued for only by forced heirs, or by their heirs or assigns; neither the donees, legatees, nor creditors of the deceased can require that reduction nor avail themselves of it.
[12] Art. 3542.

The following actions are prescribed by five years:
That for the nullity or rescission of contracts, testaments or other acts.
That for the reduction of excessive donations.
That for the rescission of partitions and guarantee of the portions.
This prescription only commences against minors after their majority.