LONGUE VUE FOUNDATION, TRANSFEREE OF THE ASSETS OF THE ESTATE OF EDITH R. STERN, DECEASED; ESTATE OF EDITH R. STERN, DECEASED, EDGAR B. STERN, JR., EXECUTOR, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4440-85.          Filed January 26, 1988.

---

*Thomas B. Lemann* and *Raymond J. Brandt,* for the petitioners.

*Linda K. West,* for the respondent.

SWIFT, *Judge:* This matter is before the Court on petitioners' motions for summary judgment and for partial summary judgment filed under Rule 121.[1] Respondent objects to petitioners' motion for summary judgment on the merits of the issue raised therein, and respondent objects to petitioners' motion for partial summary judgment on the grounds that the issue raised therein is not ripe for summary judgment.

In a statutory notice of deficiency dated December 4, 1984, respondent determined a deficiency in the amount of $9,244,917 in the Federal estate tax liability of the Estate of Edith R. Stern. In a statutory notice of transferee liability dated December 4, 1984, respondent determined that petitioner Longue Vue Foundation was liable as a transferee for the full $9,244,917 Federal estate tax deficiency determined against the Estate of Edith R. Stern.

Petitioners' motion for summary judgment raises the following issue: Whether a charitable estate tax deduction is allowable under section 2055 for a testamentary bequest to charity where the charitable bequest is voidable by the exercise of a forced heir's legitime[2] interest under Louisiana law. Petitioners' motion for partial summary judgment raises an issue concerning the retroactivity of a particular Louisiana statute. In light of our decision on petitioners' motion for summary judgment, it is not necessary to address petitioners' motion for partial summary judgment and that motion will be denied as moot.

---

[1] All Rule references are to the Tax Court Rules of Practice and Procedure, and, unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect as of the date of decedent's death.

[2] "Legitime" has been defined as follows:

"In the civil law, that portion of a parent's estate of which he cannot disinherit his children without a legal cause. That interest in a succession of which forced heirs may not be deprived. * * * [Black's Law Dictionary 811 (5th ed. 1979).]"

### FINDINGS OF FACT

Many of the facts have been stipulated and are found accordingly.

Decedent Edith R. Stern died on September 11, 1980. On the date of death, she was a resident of Louisiana. Decedent was the mother of three children: Edgar B. Stern, Jr. (the executor of decedent's estate and one of the petitioners in this case), Philip Stern, and Audrey Stern. Audrey Stern died prior to decedent's death but was survived by children.

During her lifetime, decedent made large gifts to her children. The parties have agreed on the value of the inter vivos gifts made to decedent's children as of the date of the various gifts and as of the date of decedent's death, as follows:

|  | Date-of-gift values | Date-of-death values |
|---|---|---|
| Edgar B. Stern, Jr. | $4,290,639 | $13,926,002 |
| Philip Stern | 5,469,529 | 15,968,259 |
| Audrey Stern | 4,696,840 | 13,919,764 |
| Total | 14,457,008 | 43,814,025 |

Also during her lifetime, decedent, whose father was Julius Rosenwald (one of the founders of Sears, Roebuck & Co.), expressed her desire to leave her large home and garden in New Orleans to charity for use as a public museum.

On October 4, 1980, decedent's will was probated. Under the terms of the will, decedent devised her home and garden to Longue Vue Foundation, a charitable organization. Decedent also bequeathed $5 million in cash to Longue Vue Foundation as an endowment to maintain the home and garden. At the time of decedent's death, the approximate total value of the devise and bequest to Longue Vue Foundation was $12,437,257.

The residue of decedent's estate passed by will to her two surviving children, Edgar and Philip Stern, and to a Thomas B. Hess. The record does not disclose the identity of Thomas B. Hess. Other than the residue of her estate, decedent made no specific bequests to her children or grandchildren in her will.

Under Louisiana law, decedent's two surviving children and the children of Audrey Stern were considered forced heirs. Upon her death, decedent's two children and the

children of Audrey Stern therefore were entitled to two-thirds of the estate.[3]

On May 30, 1981, within 9 months of decedent's death, Edgar B. Stern, Jr., executed a disclaimer of his right to his legitime interest in decedent's estate, as well as to his share of the residue of decedent's estate. The effect of Edgar Stern's disclaimer was to increase the size of the legitime interest to which the remaining forced heirs were entitled. La. Civ. Code Ann. art. 1498 (West 1987).

The Federal estate tax return for decedent's estate was filed on December 15, 1981. The value of decedent's estate as reported on the return was $14,466,067. The $12,437,257 devise and bequest to Longue Vue Foundation was claimed as a charitable deduction under section 2055.

In 1983, three years after decedent's death, the remaining forced heirs (namely, Philip Stern and the children of Audrey Stern) waived their rights to claim their legitime interests in decedent's estate. The waivers, dated September 30, 1983, were included in the joint petition that was filed by the estate, by Philip Stern, and by the children of Audrey Stern in the Louisiana State Civil District Court for the Parish of Orleans to permit the Longue Vue Foundation to take possession of decedent's home and garden, and the $5 million cash bequest. The judgment authorizing Longue Vue Foundation to take possession of the property was dated September 30, 1983.

In calculating the amount of the forced heir's legitime interests under Louisiana law, respondent determined that the total cumulative value of decedent's estate was $93,498,593. This figure included inter vivos gifts made by decedent and the value of the property includable in decedent's estate on the date of death. Respondent calculated the total cumulative value of the estate as follows:

|  | Value |
|---|---|
| Estate at death (per return) | $14,466,067 |
| Plus inter vivos gifts | 79,435,209 |
| Less amounts owed by the estate | (402,683) |
| Total cumulative value of estate | 93,498,593 |

[3]As described more fully below, under Louisiana law, forced heirs are legal heirs of the testator and have the right, if they so elect, to claim as their legitime interest a specified portion of the testator's property. Testamentary dispositions that would deprive forced heirs of their legitime interest are voidable but are not void. La. Civ. Code Ann. arts. 1493, 1495, and 1502 (West 1987), and the provisions thereof in effect in 1980.

Respondent further calculated that the legitime interests of the forced heirs was two-thirds of the total estate, or $62,332,394. The portion of decedent's estate that respondent determined was not subject to the legitime interests of the forced heirs was the remaining one-third of the value of the estate, or $31,166,199.

Because the forced heirs received $43,814,025 in gifts from decedent ( based on the date-of-death values therefor ), respondent determined that the forced heirs would be entitled to claim an additional $18,518,369 from the estate.[4] Respondent, therefore, determined that no deduction was allowable under section 2055 for the charitable bequest to Longue Vue Foundation because the bequest was voidable through the exercise of the forced heirs' legitime interests.

Petitioner concedes that if we disallow the charitable deduction to decedent's estate, petitioner Longue Vue Foundation will be liable as a transferee under section 6901(a) for the deficiency in estate taxes due from the estate.

## OPINION

A decision on a motion for summary judgment may be rendered if there is no genuine issue as to any material fact. Rule 121(b). Either party may move for summary judgment in his favor on all or any part of the legal issues in controversy. Rule 121(a). Respondent has not alleged any specific facts that would necessitate a trial on the issue raised in petitioners' motion for summary judgment. See *Gauntt v. Commissioner,* 82 T.C. 96, 101 (1984).

Section 2055 allows a Federal estate tax deduction for charitable devises and bequests to qualified donee organizations. Where a charitable devise or bequest is contingent upon the happening of a precedent event or condition, or upon the happening of a subsequent event or condition, a charitable deduction will not be allowed unless the possibility of the occurrence of the event or condition is so remote as to be negligible. Sec. 20.2055-2(b)(1), Estate Tax Regs.[5]

---

[4]$62,332,394 minus $43,814,025 equals $18,518,369.

[5]Sec. 20.2055-2(b)(1), Estate Tax Regs., provides as follows:

Respondent argues that the possibility that decedent's forced heirs would exercise their legitime interests was not so remote as to be negligible. Respondent also argues that in order for the charitable devise and bequest to be deductible, the forced heirs would have had to file disclaimers of their legitime interests as provided under section 2518.

Petitioners argue that the cases that have considered the effect on charitable deductions of State statutes that protect forced heirs have allowed charitable estate tax deductions where the charitable bequest was explicit in the will, where under State law, the bequest to charity was merely voidable, and where the charitable donee actually received the full amount of the bequest with respect to which the charitable deduction was claimed. Petitioners also argue that there is no factual matter in dispute relevant to this issue and that this issue can be decided as a matter of law. For the reasons set forth below, we agree with petitioners.

Under Louisiana law, a testamentary disposition that impinges on a forced heir's legitime interest is not void. It is merely voidable. Article 1502 of the Louisiana Civil Code Annotated (West 1987) provides as follows:

Art. 1502. Reduction of excessive donations

Any disposal of property, whether inter vivos or mortis causa, exceeding the quantum of which a person may legally dispose to the prejudice of the forced heirs, is not null, but only reducible to that quantum.

The testamentary transfer is effective immediately upon death of the testator, and the testamentary donee lawfully holds ownership and possession of his interest even if the

(b) *Transfers subject to a condition or a power.* (1) If, as of the date of a decedent's death, a transfer for charitable purposes is dependent upon the performance of some act or the happening of a precedent event in order that it might become effective, no deduction is allowable unless the possibility that the charitable transfer will not become effective is so remote as to be negligible. If an estate or interest has passed to, or is vested in, charity at the time of a decedent's death and the estate or interest would be defeated by the subsequent performance of some act or the happening of some event, the possibility of occurrence of which appeared at the time of the decedent's death to be so remote as to be negligible, the deduction is allowable. If the legatee, devisee, donee, or trustee is empowered to divert the property or fund, in whole or in part, to a use or purpose which would have rendered it, to the extent that it is subject to such power, not deductible had it been directly so bequeathed, devised, or given by the decedent, the deduction will be limited to that portion, if any, of the property or fund which is exempt from an exercise of the power.

testamentary transfer impinges on a legitime interest of a forced heir. Only if and when the forced heir demands a reduction of the testamentary transfer will any reduction thereof occur. *Ramsey v. Ramsey,* 385 So. 2d 919, 924 (La. App. 1980); *Cox v. Von Ahlefeldt,* 105 La. 543, 30 So. 175, 214 (1900).

A forced heir, under Louisiana law, is seized of a right but is not seized in fact and has no legal interest in the property subject to the testamentary transfer until he asserts his right to the succession and takes possession of his interest according to law. *Succession of Marten,* 234 La. 566, 100 So. 2d 509, 512-513 (1958); *Sun Oil Co. v. Tarver,* 219 La. 103, 52 So. 2d 437, 443-444 (1951). See also *Baten v. Taylor,* 386 So. 2d 333, 340 (La. 1979).

Accordingly, under Louisiana law, decedent's testamentary transfer to Longue Vue Foundation was effective to transfer ownership of the property and the cash endowment to Longue Vue Foundation immediately upon decedent's death. Longue Vue Foundation received its ownership interest from decedent under the will, not from the forced heirs and not as a result of their failure to assert their legitime interests.

In *Varick v. Commissioner,* 10 T.C. 318 (1948) (Court-reviewed), we examined the deductibility for Federal estate tax purposes of a charitable bequest that was voidable by the exercise of a forced heir's statutory share under California law. The facts were similar to those involved herein. One forced heir disclaimed his interest in the charitable bequest made by the decedent. The other forced heir did not disclaim her interest. Distinguishing under California law between void and voidable charitable bequests, we found that the estate tax charitable deduction was allowable even though a disclaimer was not made by both forced heirs, where the charitable bequest was merely voidable and where the forced heirs did nothing to assert their statutory rights. The Court stated as follows:

> The charitable bequests of decedent in excess of one-third of her estate were voidable by her heirs. No steps were taken by them to render the bequests invalid, but, on the contrary, they gave explicit or tacit consent to the distribution of decedent's estate pursuant to the terms of her will. Therefore, the full amount of the interests bequeathed by decedent to the

three charities here involved passed to them from decedent under her will and is deductible from her gross estate. * * * [*Varick v. Commissioner, supra* at 322.]

See also *Estate of Butler v. Commissioner,* 18 T.C. 914, 921-922 (1952).

In *Humphrey v. Millard,* 79 F.2d 107 (2d Cir. 1935), a New York statute provided that charitable bequests could not be made of more than one-half of an estate. The Second Circuit noted New York court decisions that described charitable bequests in violation of the New York statute as voidable, not void. The Second Circuit concluded that the charitable bequests were not too remote, uncertain, or indefinite to be disallowed for Federal estate tax purposes. In that regard, the Second Circuit emphasized that the uncertainties affecting the charitable bequests were not found in the will but arose only by virtue of State law, as follows:

But here no uncertainty existed at the time [decedent] died which was inherent in the language of his will. But for the New York statute above quoted, the provisions of the will disposing of the residuary estate were definite enough. Until and unless the widow exercised her statutory right to defeat partially the tax-exempt testamentary disposition of the residuary estate which her husband had made, his will was effective as to all of it. * * * While it cannot be said that there was no uncertainty as to the amount of the charitable bequests at the time the testator died, however unreal subsequent events have proved that uncertainty to have been, that related only to the validity of the will as an instrument for the transfer of one-half of the residuary estate. When the will was proved and allowed in the Surrogate's Court, it was for the first time judicially determined to be the effective will of the testator in all respects as written. This was not only a decision binding upon the defendants that the will was valid, but that it disposed of the residuary estate as of the date of the death of the testator in a manner exempt from federal estate taxation under section 403(a)(3) of the Revenue Act 1921. It may be said that more or less uncertainty exists as to the validity of any will until it is proved and allowed. * * * [*Humphrey v. Millard, supra* at 108. Citations omitted.]

In *Commissioner v. First National Bank of Atlanta,* 102 F.2d 129 (5th Cir. 1939), affg. 36 B.T.A. 491 (1937), a Georgia statute provided that charitable bequests made under a will executed within 90 days of a testator's death shall be void. The Fifth Circuit held that the charitable bequests were effective and that the bequests were suffi-

ciently definite and certain to be allowed for Federal estate tax purposes. The Fifth Circuit explained that—

the definiteness and certainty of bequests, required by the Federal statutes, is as to the intent of the testator as manifested by the terms of his will. It is not affected by the possibility of contest and defeat of the will, or of any provision in it. If read according to its terms, the bequests are definite, certain, unequivocal and final from the standpoint of the testator's desire and will, and unobjected to, they stand as valid as against those having right to contest or object to them, they stand also as valid and definite for the purposes of taxation. [*Commissioner v. First National Bank of Atlanta, supra* at 131. Citations omitted.]

See also *Dimock v. Corwin,* 99 F.2d 799, 802 (2d Cir. 1938).

The regulations under section 2055 contain an example that supports our analysis. In example *(6)* of section 20.2055-2(e)(1)(i), Estate Tax Regs., a testator devised real property to charity. The charitable devise could have been defeated by the exercise of the surviving spouse's statutory dower rights. The example concludes that the surviving spouse's unexercised dower rights are to be ignored, and the charitable deduction is to be allowed.

A provision of the recently promulgated regulations under section 2518 also is relevant to our analysis.[6] Section 25.2518-1(c)(2), Gift Tax Regs., distinguishes between disclaimers that are void or voided, on the one hand, and those that are merely voidable, on the other. It states that disclaimers that are void, as well as disclaimers that are voidable but that, at some point in time, are voided, will not be treated as valid disclaimers. Disclaimers that are merely voidable, however, and that, in fact, are not ever voided by whoever holds that power are to be recognized as qualifying disclaimers.[7] It is the latter situation that is analogous to the voidable charitable devise and bequest before us.

If the voidability of a disclaimer is to be ignored for Federal gift and estate tax purposes where the right to void the disclaimer is not exercised, we discern no reason why the voidability of a charitable gift cannot be ignored where the charitable gift is not voided, where the charitable gift otherwise is effective as of the date of death, and where the

---

[6]The regulations under sec. 2518 were promulgated on Aug. 6, 1986.

[7]Sec. 25.2518-1(c)(2), Gift Tax Regs., provides as follows:

(2) *Creditor's claims.* The fact that a disclaimer is voidable by the disclaimant's creditors has no effect on the determination of whether such disclaimer constitutes a qualified disclaimer. However, a disclaimer that is wholly void or that is voided by the disclaimant's creditors cannot be a qualified disclaimer.

testator's intent to make the charitable gift is clearly set forth in the will. In both of these situations, as of the date of death or as of the date of the disclaimer, some indefiniteness and uncertainty exists as to what eventually will happen to the devise or bequest in question. As explained, however, the cases and respondent's regulations look beyond the voidable character of the gifts or disclaimers, and treat the gifts or disclaimers as effective and final, at least in those situations where the gifts or disclaimers in question are never voided. In other words, the mere voidability of a gift or disclaimer in these situations is not regarded as creating a contingency that fails the "so remote as to be negligible" test of the regulations under section 2055.

Respondent contends that if petitioners prevail herein, respondent's agents constantly will have to monitor charitable gifts that are voidable by forced heirs in order to ascertain whether the charitable gifts are ever voided. Petitioners respond that even where formal disclaimers are required under section 2518, respondent's agents constantly must determine whether the disclaimers are valid. Petitioners emphasize that under any decision we reach, as part of the audit examination process, respondent's agents will have to verify various post-death events.

It would appear that respondent's agents can adequately protect the revenue where voidable charitable gifts are involved, as they did in the instant case, by keeping the examination of the estate open until after the transfer to the charity has occurred. Typically, State probate authorities will not allow actual transfers of the property to occur until after all forced heirs have waived their statutory rights to void the charitable gifts. In further regard to respondent's argument on this point, we agree with the following statement of the Ninth Circuit in rejecting a similar argument:

it is not necessary to police this matter preemptively by denying or limiting the charitable deduction on the basis of an artificial procedure that estimates the probability of such a settlement at the moment of death. * * * If we were to invalidate the charitable deduction in such cases * * * we would largely undermine Congress's purpose in allowing charitable deductions—to encourage testators to make charitable

bequests. * * * [*Ahmanson Foundation v. United States,* 674 F.2d 761, 771 (9th Cir. 1981).]

Respondent argues further that in order for the charitable devise and bequest to the Longue Vue Foundation to be deductible, each of the forced heirs must file disclaimers that qualify under section 2518.[8] Paragraph 4 of section 2518(b) makes it clear, however, that the disclaimer provisions apply only where the interest in property being disclaimed will be transferred to the decedent's spouse or to a person other than the person making the disclaimer *as a result of the disclaimer.* As we have explained, under Louisiana law, the devise and bequest in question herein passed to the Longue Vue Foundation under the will, immediately upon the death of decedent. The transfer of ownership to Longue Vue Foundation occurred as a testamentary gift from the decedent, not as a result of disclaimers executed by the forced heirs. See also *Estate of Dancy v. Commissioner,* 89 T.C. 550, 557 (1987).

Respondent relies on *Bel v. United States,* 310 F. Supp. 1189 (W.D. La. 1970), affd. in part and remanded in part 452 F.2d 683 (5th Cir. 1971), which involved rights of forced heirs under Louisiana law in the context of the marital deduction under section 2056. The District Court, in effect, held that because of the anti-disclaimer provision of section 2056, as applicable to decedents dying in 1961,[9] a transfer

---

[8]Sec. 2518, in relevant part, provides as follows:

SEC. 2518(a). GENERAL RULE.—For purposes of this subtitle, if a person makes a qualified disclaimer with respect to any interest in property, this subtitle shall apply with respect to such interest as if the interest had never been transferred to such person.

(b) QUALIFIED DISCLAIMER DEFINED.—For purposes of subsection (a), the term "qualified disclaimer" means an irrevocable and unqualified refusal by a person to accept an interest in property but only if—

(1) such refusal is in writing.

(2) such writing is received by the transferor of the interest, his legal representative, or the holder of the legal title to the property to which the interest relates not later than the date which is 9 months after the later of—

(A) the date on which the transfer creating the interest in such person is made, or

(B) the day on which such person attains age 21,

(3) such person has not accepted the interest or any of its benefits, and

(4) as a result of such refusal, the interest passes without any direction on the part of the person and passes either—

(A) to the spouse of the decedent, or

(B) to a person other than the person making the disclaimer.

[9]Sec. 2056, in relevant part, as applicable in 1961, provided as follows:

SEC. 2056(d). DISCLAIMERS.

contrary to the rights of forced heirs in Louisiana, for marital deduction purposes, was to be treated as void, regardless of its void or voidable nature under Louisiana law. Therefore, any such interest that the surviving spouse actually received was treated as passing not from the decedent to the surviving spouse, but from the decedent to the forced heirs and then to the surviving spouse. Accordingly, the District Court held that such an interest was not eligible for the marital deduction.

The District Court's decision in *Bel* on the marital deduction issue was remanded by the Fifth Circuit for an analysis of that issue under the provisions of section 20.2056(e)-2(d)(2), Estate Tax Regs. *Bel v. United States,* 452 F.2d 683, 694 (5th Cir. 1971). Those provisions do not apply in this case. Respondent, however, cites the District Court opinion in *Bel* as controlling our resolution of this case. We find the District Court's opinion in *Bel* to be inapplicable. The charitable deduction provisions of section 2055 that apply in this case contain no provision comparable or even analogous to the anti-disclaimer provision of section 2056 that applied to the year at issue in *Bel.* That opinion is completely distinguishable from the facts and law of the instant case and provides no support for respondent's position herein.

For the reasons stated, we conclude that the charitable deduction in question is allowable under section 2055. Petitioners' motion for summary judgment will be granted.

*An appropriate order will be entered.*

---

(2) BY ANY OTHER PERSON.—If under this section an interest would, in the absence of a disclaimer by any person other than the surviving spouse, be considered as passing from the decedent to such person, and if a disclaimer of such interest is made by such person and as a result of such disclaimer the surviving spouse is entitled to receive such interest, then such interest shall, for purposes of this section, be considered as passing, not to the surviving spouse, but to the person who made the disclaimer, in the same manner as if the disclaimer had not been made.